1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEFFREY TODD EASTMAN,                    No.  2:23-cv-01602 TLN DB P

12                  Plaintiff,

13          v.                                ORDER

14   STATE OF CALIFORNIA, et al.,

15                  Defendants.

16

17          Plaintiff Jeffrey Todd Eastman proceeds without counsel and seeks relief under 42 U.S.C.

18   § 1983. This matter was referred to the undersigned by Local Rule 302. See 28 U.S.C. §

19   636(b)(1). Plaintiff's complaint and motion to proceed in forma pauperis are before the court. For

20   the reasons set forth below, the complaint fails to state a claim, but plaintiff is granted leave to

21   file an amended complaint within 30 days of the date of this order.

22       **I.      In Forma Pauperis**

23          Plaintiff seeks to proceed in forma pauperis. (ECF No. 2.) The declaration makes the

24   showing required by 28 U.S.C. § 1915(a). The motion is granted. By separate order, plaintiff will

25   be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

26   1915(b)(1). The order will direct the appropriate agency to collect the initial partial filing fee

27   from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be

28   obligated for monthly payments of twenty percent of the preceding month's income credited to

                                                  1

plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00 until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II.    Screening Requirement

Pursuant to 28 U.S.C. § 1915(e), the court must screen every in forma pauperis proceeding, and mut order dismissal of the case if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (2000). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim that shows the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In order to state a cognizable claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id., 550 U.S. at 555. The facts alleged must "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555). In reviewing a complaint under this standard, the court accepts as true the allegations of the complaint and construes the pleading in the light most favorable to the plaintiff. See id.; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III.    Plaintiff's Allegations

Plaintiff is classified as "SNY" inmate with special needs for institutional protection and is a CCCMS participant. (ECF No. 1 at 3.) While housed at Lancaster Correctional Facility in May of 2022, plaintiff filed a grievance expressing concerns for his safety and security. (Id. at 3, 16.) Plaintiff was subsequently transferred to Mule Creek State Prison ("MCSP") which he was told would be a safer atmosphere. (Id. at 5.)

At MCSP, plaintiff enrolled in Folsom Lake college and acquired a job. (ECF No. 1 at 5.) In mid-November, plaintiff began receiving rumors that gang members who had learned the full nature of plaintiffs' charges were plotting to attack him. (Id.) Plaintiff advised counselor Roderick and no immediate action was taken. (Id.) In December, plaintiff received information that inmate Humphrey possessed information on his GTL tablet reflecting plaintiffs' charges, which were allegations of sexual misconduct with a child, and a photo of plaintiff. (Id.) CDCR correctional officer/staff observed the damaging documents, and out of spite, approved the to be forwarded to inmate Humphrey's GTL tablet (in the "getting out" app), thus "authorizing a hit" on plaintiff's body. (Id. at 6.) Although plaintiff requested all digital documents be preserved for litigation purposes, Counselor Roderick stated the institution had erased the documents from inmate's GTL tablet. (Id. at 7.)

Inmate Humphrey conspired and plotted an attack on plaintiff. (ECF No. 1 at 6.) On December 21, 2022, staff allowed inmates Granderson and Hensley to tamper with and move plaintiff's property from cell 218 to cell 225. (Id. at 7.) When plaintiff returned from work, inmate Granderson approached plaintiff to tell him he had been moved. (Id.) Humphrey and others created a perimeter around plaintiff. (Id.) Plaintiff retuned to cell 225 and called his mother and father alerting them that circumstances were becoming increasingly terrorizing and that he was going to Ad-Seg. (Id.) Plaintiff named inmates Humphrey, Granderson, Hensley, and Caudle as "enemies" in his confidential file. (Id.)

In January 2023, plaintiff was moved from C-yard Ad-Seg to B-yard, Building 14. (ECF No. 1 at 7.) Lt. Maribel Saragoza conducted a "video-visit" with plaintiff as part of an Internal Affairs Office investigation in late January or early February 2023. (Id.) Saragoza would not reveal the names of the parties involved with the documents on the GTL tablet. (Id.)

On April 1, 2023, inmate Gilbert was housed with plaintiff in Building 9 of B-yard in unit 237. (ECF No. 1 at 8.) Inmate Gilbert said inmate Humphrey was his "homey", that he remembered plaintiff's face, and that was there to harm someone. (Id.) The next day inmate Gilbert was swapped for inmate Foster who exhibited wild and erratic behavior and used narcotics in plaintiff's presence. (Id.) Fearing the worst was yet to come, plaintiff placed inmate

Foster's unpacked property outside of the cell and CDCR correctional staff Gaetano issued plaintiff a CDCR RVR 115 for refusing housing. (Id. at 8-9.) This occurred after plaintiff had informed staff of his safety concerns. (Id. at 9.)

On April 3, CDCR staff, intending to cause harm and injury to plaintiff, moved inmate Granderson from C-yard to B-yard where plaintiff was housed and assigned him to house with plaintiff in unit 237. (ECF No. 1 at 9.) This occurred even though plaintiff named Granderson as an "enemy" and a suspect and thief. (Id.) Because plaintiff had received an RVR 115 for allegedly refusing housing the previous day, plaintiff did not refuse housing again. (Id.) Plaintiff refused to engage in physical combat with Granderson while being forced to house with him. (Id.)

On Thursday, April 20, 2023, Sgt. E. Romero called plaintiff into B-yard program office and stated he had been alerted by staff that an ongoing Internal Affairs Investigation had confirmed inmate Granderson was a "suspect" against plaintiff and was supposed to be listed as an "enemy" in plaintiff's confidential file. (ECF No. 1 at 9.) However, Sgt. Romero stated he would not move inmate Granderson to another unit until the following Saturday. (Id. at 9-10.)

On April 21, 2023, inmate Harrison—an inmate who was formerly an associate of inmate Humphrey— began to conspire with inmate Granderson and inmate Nichols to have plaintiff harmed and removed. (ECF No. 1 at 10.) Harrison and Nichols stated they were going to attack plaintiff when Granderson came out of the cell. (Id.) Harrison stated further, "I'm that same nigga that got you off of C-yard," confirming he was involved in the groups of inmates plotting to attack plaintiff. (Id.) Plaintiff received a "lock-up order" to return to C-yard Ad-Seg. (Id.) Sgt. E. Romero authored a confidential memorandum dated 4/21/23 documenting these events. (Id.)

Plaintiff was transferred to California Men's Colony State Prison, where, on May 15, 2023, Lt. R. Viles conducted an RVR hearing regarding the charge of plaintiff "refusing housing" to inmate Foster on April 2, 2023. (ECF No. 1 at 10.) Lt. Viles stated "none of what you're presenting [for a defense] exists in my computer" and found plaintiff guilty of disobeying a direct order. (Id.) Lt. Viles imposed a loss of 30 days credit and placed plaintiff on C-status (loss of canteen, phone, and other privileges) for 90 days. (Id.)

////

4

Plaintiff alleges his constitutional rights to engage in recovery and therapeutic/ rehabilitative programs have been disrupted several times (ECF No. 1 at 11.) He alleges CDCR staff has repeatedly placed him in dangerous and untenable situations and engaged in "terror, plotting, scheming, corruption, threats, and retaliation[.]" (Id. at 10.)

The defendants named in the complaint are Warden Covello, City of Ione, County of Amador, and State of California. (ECF No. 1 at 1-2.) Plaintiff seeks monetary damages and injunctive relief. (Id. 1 at 3.)

## IV.    Discussion

Below, the court first sets forth applicable legal standards for constitutional deprivations plaintiff may be attempting to allege in the complaint. The court then addresses the deficiencies of the complaint as to the named defendants.

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) the defendant committed the alleged conduct while acting under color of state law; and (2) the plaintiff was deprived of a constitutional right as a result of the defendant's conduct. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

### A.    Failure to Protect

In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

////

////

**B.      First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); see also Watison v. Carter, 668 F.3d 1108, 1114 (2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

**C.      Right to Education or Rehabilitation \ Due Process**

A due process claim requires deprivation of a constitutionally protected liberty or property interest. See Rizzo, 778 F.2d at 530. A protected liberty interest may arise either from the Due Process Clause itself, or from the laws of the states. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). However, prisoners do not have a liberty interest in education or rehabilitation under the Due Process Clause, and there is no constitutional right to education or rehabilitation in prison. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate Eighth Amendment); Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (prisoners do not have a liberty interest in education or rehabilitation under the Due Process Clause).

**D.      State of California**

The Eleventh Amendment bars any suit against a state or state agency absent a valid waiver or abrogation of its sovereign immunity. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 10 (1890). This immunity applies regardless of whether a state or state agency is sued for damages or injunctive relief, Alabama v. Pugh, 438 U.S. 731, 732 (1978), and regardless of whether the plaintiff's claim arises under federal or state law, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984).

While Congress may validly abrogate a state's sovereign immunity by statute, the Supreme Court has repeatedly emphasized that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." Kentucky v. Graham, 473 U.S. 159, 169 n.17 (1985); accord

1   Quern v. Jordan, 440 U.S. 332, 342 (1979). The "State of California has not waived its Eleventh

2   Amendment immunity with respect to claims brought under § 1983 in federal court." Dittman v.

3   California, 191 F.3d 1020, 1025-26 (9th Cir. 1999); see also Atascadero State Hosp. v. Scanlon,

4   473 U.S. 234, 241 (1985), superseded on other grounds by statute, Rehabilitation Act

5   Amendments of 1986, 42 U.S.C. § 2000d–7 (observing that the California Constitution does not

6   waive the state's Eleventh Amendment immunity).

7          Accordingly, plaintiff does not state a claim against the State of California.

8          **E.      County of Amador and City of Ione**

9          A local government entity can be held liable under 42 U.S.C. § 1983 when execution of a

10  policy or custom inflicts the plaintiff's injury. See Monell v. New York City Dept. of Social

11  Servs., 436 U.S. 658, 689-91 (1977). In order to state a claim against a local government unit

12  under section 1983, a plaintiff must allege facts showing a constitutional deprivation was caused

13  by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by

14  the local government unit or by the local government's final decision maker. Id. at 690; Board of

15  the County Commissioners v. Brown, 520 U.S. 397, 402-04 (1997); Navarro v. Block, 72 F.3d

16  712, 714 (9th Cir. 1995). Here, the complaint contains no such allegations against the City of Ione

17  or the County of Amador.

18          Accordingly, the complaint fails to state a claim against either local government unit. See

19  Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (applying Iqbal's pleading

20  standards to Monell claims).

21          **F.      Warden Covello**

22          The only individual defendant is Warden Covello, and there are no specific factual

23  allegations against Warden Covello. Under § 1983, a plaintiff must demonstrate each named

24  defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662,

25  676-77 (2009); Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v.

26  City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on

27  supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77.

28  Supervisory personnel may only be held liable if they "participated in or directed the violations,

or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).

Plaintiff does not state a claim against Warden Covello because the complaint does not plead facts showing that Warden Covello personally participated in any deprivation of plaintiff's rights.

### G.      Plaintiff's Pending Motion (ECF No. 8)

Subsequent to the initial complaint, plaintiff filed a document titled "Motion to Provide Additional Evidence" with an additional document (grievance response) to be attached to the complaint. (ECF No. 8.) In this instance, the motion is granted, but plaintiff is cautioned that the court generally does not allow piecemeal amendment or supplements to complaints. Any amended complaint plaintiff files should be complete in itself, without reference to the prior or superseded pleading, and without need for supplements or amendments. See E.D. Cal. Local Rule 220.

### V.      Conclusion and Order

For the reasons set forth above, plaintiff's complaint does not state any cognizable claims, but plaintiff is granted leave to file an amended complaint. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). This opportunity to amend is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Accordingly, plaintiff should focus on the curing the deficiencies in the claims already presented. Plaintiff may, however, name additional defendants related to the claims already set forth.

If plaintiff chooses to file an amended complaint, it should be titled "first amended complaint" and must state what each named defendant did that led to the deprivation of constitutional rights. See Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009).

In the alternative, plaintiff may notify the court he wishes to stand on the complaint as it is currently pleaded. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004). If plaintiff chooses this option, the undersigned will issue findings and recommendations to dismiss the complaint without further leave to amend, after which plaintiff will be granted an opportunity

8

to file objections, and a district judge will assigned to the case to determine whether the complaint states a cognizable claim. In the further alternative, if plaintiff does not wish to pursue his claims further, plaintiff may file a notice of voluntary dismissal, which will terminate this action by operation of law.

**VI.     Order**

In accordance with the above, IT IS HEREBY ORDERED as follows:

1.  Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is GRANTED.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action as set forth by separate order.

3.  The Clerk's Office shall send plaintiff a blank civil rights complaint form.

4. Within thirty days from the date of service of this order, plaintiff must file one of the following:

   a.   An amended complaint curing the deficiencies identified in this order;

   b.   A notice of election to stand on the complaint as filed; or

   c.   A notice of voluntary dismissal.

5.  Failure to respond to this order will result in a recommendation that this action be dismissed for failure to obey a court order and failure to prosecute.

Dated:  May 7, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB7
east1602.scrn

9