UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TODD EASTMAN, | No. 2:23-cv-01602 TLN SCR P |
| Plaintiff, | |
| v. | ORDER |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

Plaintiff is a state inmate proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff's first amended complaint ("FAC") is before the undersigned for screening.

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical

1

inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**PLAINTIFF'S FAC**

**I.     Parties**

Plaintiff was incarcerated at Mule Creek State Prison or the California Men's Colony at all relevant times. (ECF No. 16 at 1.)  The complaint names thirteen total defendants: (1) J. Covello, Warden; (2) L. Roderick; (3) Y. Ortiz; (4) E. Romero; (5) Correctional Officer ("C/O") Nunez; (6) C/O Brown; (7) C/O Gaetano; (8) C/O Viles; (9) C/O Doe 1; (10) C/O Doe 2; (11) C/O Doe 3; (12) C/O Doe 4; and (13) C/O Doe 5. (Id. at 1, 8.)

**II.    Factual Allegations**

**A. Tablet Incident**

In July 2022, plaintiff was placed in the administrative segregation unit ("ASU") at California State Prison, Lancaster, after being targeted by other inmates because of his charges. (ECF No. 16 at 13-14, ¶¶ 26.)  Plaintiff was then transferred to Mule Creek State Prison ("MCSP") in late July or early August of 2022. (Id. at 14, ¶ 27.)  At MCSP, plaintiff received mental health care from clinician Dr. Brannan, obtained a job with the Prison Industry Authority, and enrolled as a full-time student with Folsom Lake College. (Id., ¶¶ 28-29.)

In November 2022, plaintiff received information that STG gang members plotted to attack him. (ECF No. 16 at 14, ¶ 30.) His cellmate J. Hensley told him inmate Humphrey possessed on his tablet information reflecting plaintiff's charges. (Id. at 14-15, ¶¶ 31-32.) Plaintiff informed Dr. Brannan, who told plaintiff to inform his correctional counselor, defendant L. Roderick. (Id. at 15, ¶ 33.)

On December 21, 2022, defendant Roderick pulled plaintiff out of his job shift for an interview in her office. (ECF No. 16 at 16, ¶ 36.) Plaintiff told Roderick about the plot to attack him and the information on Humphrey's tablet. (Id., ¶¶ 38-39.) He explained that C/O Doe 1 logged into the network and forwarded plaintiff's information to Humphrey's tablet. (Id. at 16-17, ¶ 40.) Defendant Roderick dismissed plaintiff's fears and stated that it was not possible for an inmate to obtain that information. She then ordered plaintiff to return to work without a "lock-up" order. (Id., ¶¶ 41-43.) When plaintiff returned to work, several coworkers had seen Humphrey's tablet and were discussing plaintiff's alleged sexual crimes. (Id., ¶ 44.)

Later on December 21, 2022, at approximately 12:45 p.m., plaintiff was again called from his job assignment to Defendant Roderick's office. (ECF No. 16 at ¶ 46.) Roderick stated after speaking with her investigation unit, plaintiff's information was found on inmate Humphrey's tablet and had been removed. (Id.) The information was approved by defendant C/O Doe 1, but Roderick refused to provide his actual name. (Id.) Roderick still refused to approve a "lock-up" order even after confirming his story and fear for his safety. (Id. at 18-19, ¶¶ 48-50.)

At approximately 2:30 p.m. on December 21, 2022, after his shift ended, plaintiff encountered inmate R. Granderson who told plaintiff that C/O Does Nos. 2-4 authorized plaintiff's bed move from cell 218 to 225 without plaintiff's consent or knowledge. (ECF No. 16 at 19-20, ¶¶ 52-53.) Plaintiff found his papers and some items scattered all over cell 225. (Id. at 20, ¶ 54.) Plaintiff feared for his safety and went downstairs to ask for a "lock-up" order but decided not to because the officers were complicit in the scheme. (Id. at 20-21, ¶¶ 56-57.)

At that instant, plaintiff noticed inmate Humphrey and his crew made a perimeter around plaintiff and planned to attack him. (ECF No. 16 at 21, ¶ 58.) Plaintiff returned upstairs to cell 225 and called his mother and father to tell them he was fearful for his life and inform them that

he was "locking up" in the ASU again. (Id., ¶¶ 59-60.) Plaintiff was minutes later placed in the ASU and lost his assigned job, college enrollment, and rehabilitative therapy with CMS clinician Dr. Brannan. (Id., ¶ 61.)

### B. Administrative Segregation

Dr. Mitchell was plaintiff's assigned clinician in the ASU. (ECF No. 16 at 22, ¶ 63.) Plaintiff told Dr. Mitchell there was a "hit" on his "body." (Id.) Plaintiff was also interviewed by Dr. Roderick in the ASU. He told her that inmates Granderson and Hensley "forged" his bed move and moved his property to new cell 225 and requested that they be listed as enemies in his central file. (Id., ¶ 64.) On December 23, 2022, plaintiff submitted a grievance, Log No. 344557, detailing his interviews with defendant Roderick, the forged bed move, and plot to attack him. (Id., ¶ 65.) On December 25, 2022, plaintiff submitted a separate grievance about Doe 1's authorization of plaintiff's case information to be on Humphrey's tablet (No. 344570). (Id., ¶ 66.)

### C. Request for Single-Cell Status

Plaintiff was transferred from C-yard ASU to facility B-yard, building 9, in January 2023. (ECF No. 16 at 24, ¶¶ 67-69.) In mid-January 2023, CDCR Internal Affairs Lt. M. Saragozo interviewed plaintiff about grievance No. 344570 concerning C/O Doe 1. (Id. at 24, ¶ 70.) Plaintiff asked Lt. Saragozo for the real names of the C/O Does but she refused. Plaintiff never heard from her again. (Id., ¶¶ 71-72.)

Plaintiff resumed therapy with a new clinician, defendant Y. Ortiz. (ECF No. 16 at 24, ¶ 73.) Plaintiff told defendant Ortiz about the "hit" on his life, the pain and suffering he experienced as a result, and requested he be placed on "single-cell" status. (Id. at 24-25, ¶¶ 74-76.) Defendant Ortiz refused plaintiff's request, told him to "get over the past," and focus on why he was incarcerated and his alleged crimes. (Id., ¶¶ 77-79.)

### D. Rules Violation Report

On April 21, 2023, defendant Gaetano issued a rules violation report ("RVR") 115 against plaintiff for refusing to house with an inmate who was impaired by illegal drugs and exhibiting erratic behavior. (ECF No. 16 at 27, ¶ 85.) The next day, C/O Doe 5 arranged for plaintiff's known enemy Granderson to move to the building in cell 237. (Id., ¶¶ 86-87.) Plaintiff showed

defendants Nunez, Brown, and Gaetano that Grandson was named in his grievance. (Id., ¶¶ 88-91.) Nunez, Brown, and Gaetano told plaintiff that he had to accept the housing arrangement or they would write him up. (Id., ¶ 92.) Plaintiff had no choice but to accept. (Id., ¶ 93.) From April 3, 2023, until nearly two weeks later, plaintiff was housed with R. Granderson, the subject of his grievance and someone on his enemy list. (Id., ¶ 94.) Plaintiff told defendant Ortiz about his safety concerns, but she told him to try to "work it out." (Id. at 30, ¶¶ 95-97.)

On April 20, 2023, defendant Sgt. E. Romero called plaintiff for an interview. (ECF No. 16 at 30, ¶ 98.) Romero confirmed that an Internal Affairs investigation was ongoing and that R. Granderson was listed as plaintiff's enemy. (Id., ¶ 99.) Plaintiff pleaded with Romero to remove Granderson from housing arrangement. Romero said that he could not authorize that. Plaintiff then walked to the B-yard program office to "press" staff to put him back in the ASU. (Id., ¶¶ 100-102.) Plaintiff was finally placed in the ASU on April 21, 2023. (Id., ¶ 103.)

Plaintiff's RVR hearing occurred on May 15, 2023. Plaintiff submitted evidence showing he refused housing out of fear for retaliation. Defendant Lt. Viles stated that none of the documents plaintiff described are stored in CDCR databases and found plaintiff guilty. As a result, plaintiff received an increase in level points and was kept on "closed custody" status. (ECF No. 16 at 32, ¶¶ 106-108.)

## DISCUSSION

### I.     42 U.S.C. § 1983 Claims

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

The FAC's introduction lists five Eighth Amendment violations and a single Fourteenth Amendment violation. (See ECF No. 16 at 9, 11.) However, the Eighth Amendment claims appear to be separate elements of the same "failure to protect" claim. Moreover, while the

5

introduction lists the Fourteenth Amendment claim as "determent of rehabilitation" against no specific defendant (ECF No. 16 at 11), the FAC later identifies it as an Equal Protection claim against defendants Roderick, Ortiz, and Romero. (Id. at 33-34, ¶ 112.) The common factual thread through the claim appears to be plaintiff's loss of programming in the ASU. Therefore, the undersigned liberally construes the FAC to allege: (1) an Eighth Amendment failure to protect claim; and (2) a Fourteenth Amendment claim regarding loss of programming.

### A. Eighth Amendment Failure to Protect

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). To state an Eighth Amendment claim that a prison official failed to protect, a plaintiff must allege facts showing (1) the official's act or omission was objectively, sufficiently serious; and (2) the official was deliberately indifferent to inmate's health or safety. Farmer, 511 U.S. at 834; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 833-34; Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009). To allege a "sufficiently serious" deprivation under the first prong of the test, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (internal quotation omitted). Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id.

#### i. Defendants Doe 1 and Roderick

Plaintiff alleges an Eighth Amendment failure to protect claim against defendants Doe 1 and Roderick for their acts and omissions during the incident involving plaintiff's case information appearing on inmate Humphrey's tablet. (ECF No. 16 at 33-34, ¶¶ 110, 112.)

A prison official's purposeful disclosure of sensitive case information to other inmates

may create a substantial risk of serious harm.  See, e.g., Hernandez v. Welch, No. 1:23-CV-1563 JLT SKO, 2024 WL 5294930, at *5 (E.D. Cal. Feb. 21, 2024) (screening in Eighth Amendment claim where a plaintiff became a target for harassment and threats after a prison official labeled him guilty of a crime against a minor).  Here, accepting the FAC's allegations as true, Doe 1's disclosure of plaintiff's sex-related charges subjected plaintiff to "violent threats" from coworkers and an attempted attack by Humphrey and his "crew."  The factual basis for plaintiff's initial suspicion of Doe 1 is lacking, but defendant Roderick's subsequent confirmation that Doe 1 was responsible provides the minimal, "further factual enhancement" needed for plaintiff's claim against defendant Doe 1 to proceed.  See Iqbal, 556 U.S. at 678.  Accordingly, for screening purposes, plaintiff has minimally stated a failure to protect claim against defendant Doe 1.

Plaintiff has also minimally stated a failure to protect claim against defendant Roderick.  Again, accepting the allegations as true, Roderick did not issue a "lock-down" order when plaintiff alerted her to the plot to attack him.  When she later confirmed that Doe 1 disseminated plaintiff's case information on Humphrey's tablet, she again refused to act and sent him back to his job assignment.  The court notes that plaintiff was locked down later that day, but it is not clear from the FAC who issued that order.  Thus, for screening purposes only, plaintiff's failure to protect claim against defendant Roderick may proceed as well.

### ii.  Defendants Covello, Does 2-5, Nunez, Brown, Gaetano, Ortiz, Romero

Plaintiff also alleges a failure to protect claim against defendants Covello, Does 2-5, Nunez, Brown, Gaetano, Ortiz, and Romero.  Plaintiff claims defendants collectively failed to ensure his safety by moving his enemy, inmate Granderson, to his housing unit and then ignoring plaintiff's stated safety concerns.  (ECF No. 16 at 33-35, ¶¶ 111-114.)

The undersigned finds plaintiff's safety concerns regarding Granderson insufficiently particularized to survive screening.  "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm."  Williams v. Wood, 223 F. Appx. 670, 671 (9th Cir. 2007); see also Birch v. Gonzalez, No. CV 10-7749 CJC DTB, 2012 WL 13426294, at *4 (C.D. Cal. Mar. 1, 2012) (plaintiff's allegations that he lived in fear because of his sex-offender status did not rise to the level of a "wanton and unnecessary infliction

7

of pain"), report and recommendation, No. 10-cv-7749 CJC DTB, 2012 WL 13426301 (C.D. Cal. Apr. 30, 2012). The FAC does not identify any specific, substantial risks of harm posed by Granderson's presence in the same unit, such as a threat of assault or history of assaults. See Williams, 223 F. Appx. At 671 (affirming dismissal of failure to protect claim where plaintiff "did not allege that he has been assaulted or threatened with an assault by other prisoners"). The allegation that Granderson "forged" plaintiff's bed move in concert with Does 2-5 is facially implausible, see Iqbal, 556 U.S. at 678, and thus inadequate to establish defendants' indifference.

In sum, while housing with Granderson brought plaintiff distress, the FAC does not allege a particularized threat tied to Granderson's presence that defendants were aware of and deliberately ignored. Accordingly, the FAC does not state an Eighth Amendment claim against defendants Covello, Does 2-5, Nunez, Brown, Gaetano, Ortiz, and Romero.

### iii. Lt. Viles

Finally, plaintiff claims that Viles, who presided over plaintiff's RVR hearing, violated his Eighth Amendment rights by "failing to conduct a thorough investigation" and disregarding plaintiff's evidence that he feared for his safety. (ECF No. 16 at 35, ¶ 115.)

Setting aside issues of misjoinder, Plaintiff's alleged injuries from the RVR decision, including loss of points and "closed custody" status, do not rise to the level of an Eighth Amendment violation. See Myron v. Terhune, 476 F.3d 716, 719 (9th Cir. 2007) ("Because the mere act of classification does not amount to an infliction of pain, it is not condemned by the Eighth Amendment") (internal quotations omitted). Accordingly, plaintiff has not stated a cognizable Eighth Amendment claims against defendant Viles.

## B. Fourteenth Amendment Claim

Plaintiff's Fourteenth Amendment claim regarding the loss of prison programming cannot survive screening under either an Equal Protection or Due Process lens.

"To state a claim under [§ 1983] for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Here, the FAC contains a conclusory allegation

8

(see ECF No. 16 at 34, ¶ 112) but does not allege plaintiff's membership in any protected class. Accordingly, plaintiff's complaint does not state a cognizable Equal Protection claim.

Nor has plaintiff stated a claim for "determent of rehabilitation" under the Due Process Clause of the Fourteenth Amendment. "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." Coakley v. Murphy, 884 F.2d 1218, 1220 (9th Cir. 1989). The Ninth Circuit has held that there is "there is no constitutional right to rehabilitation." See id. at 1221 (9th Cir. 1989) (dismissing plaintiff's Fourteenth Amendment Due Process claim "based on a property interest in state work release program"); Manny v. Kirkegard, 738 F. App'x 541 (9th Cir. 2018) (transfer to a prison that did not offer a sex offender rehabilitation program did not violate Fourteenth Amendment).

Accordingly, plaintiff's FAC does not state a cognizable Fourteenth Amendment claim.

## II. State Claims

Plaintiff alleges state claims for (1) negligent infliction of emotional distress; (2) defamation; (3) nuisance/trespass; (4) mental anguish; and (5) pain and suffering. (ECF No. 16 at 11.) Without addressing whether California law recognizes each claim, the undersigned notes that plaintiff has not alleged compliance with the California Government Claims Act. See Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part.") Plaintiffs raising supplemental state claims in federal court must "affirmatively allege compliance" with the Government Claims Act. Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020). Accordingly, plaintiff has not stated any cognizable state claims.

## III. Options from Which Plaintiff Must Choose

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated a valid Eighth Amendment failure to protect claim against defendants Doe 1 and Roderick. However, the allegations in the complaint are not sufficient to state any claim for relief against defendants Covello, Ortiz, Romero, Nunez, Brown, Gaetano, Viles, and Does 2-5.

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**Option 1:** The first option available to plaintiff is to proceed immediately against defendants Doe 1 and Roderick on the Eighth Amendment failure to protect claim. By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants Covello, Ortiz, Romero, Nunez, Brown, Gaetano, Viles, and Does 2-5. The court will proceed to immediately serve the complaint and order a response from defendant Roderick only. **Plaintiff is advised that the undersigned cannot order the service of Doe 1 until plaintiff has identified him through discovery and filed a motion to amend the complaint to substitute his real name.** See Mosier v. California Dep't of Corr. & Rehab., 2012 WL 2577524, at *3 (E.D. Cal. July 3, 2012).

**Option No. 2:** The second option available to plaintiff is to file an amended complaint to fix the problems described above. The amended complaint must reflect the case number for this action, **2:23-cv-01602 TLN SCR P**, and be titled **"Second Amended Complaint."** If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's claims against defendants Covello, Ortiz, Romero, Nunez, Brown, Gaetano, Viles, and Does 2-5 do not state claims for which relief can be granted.

/////

2. Plaintiff has the option to proceed immediately on his cognizable Eighth Amendment failure to protect claims against defendants Doe 1 and Roderick as set forth above, or to file an amended complaint.

3. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

4. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of Covello, Ortiz, Romero, Nunez, Brown, Gaetano, Viles, and Does 2-5.

DATED: June 13, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| JEFFREY TODD EASTMAN, | No. 2:23-cv-01602 TN SCR P |
|---|---|
| Plaintiff, | |
| v. | NOTICE OF ELECTION |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his Eighth Amendment failure to protect claim against defendants Doe 1 and Roderick. Plaintiff understands that by choosing this option, (1) the remaining defendants will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a); and (2) Doe 1 cannot be served until plaintiff has identified him through discovery and filed a motion to amend the complaint.

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.

DATED:_____

_____
Jeffrey Todd Eastman
Plaintiff pro se

1